PHILIP TISCHLER, ADMINISTRATOR AD PROSEQUEN-
DUM, ETC., OF DORA TISCHLER, DECEASED, ET AL.,
PLAINTIFFS-RESPONDENTS, v. WEST JERSEY AND
SEASHORE RAILROAD COMPANY, A CORPORATION,
DEFENDANT-APPELLANT.

Argued February 9, 1933—Decided April 27, 1933.

For the appellant, *Bourgeois & Coulomb*.

For the respondents, *William I. Garrison*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This case involves an appeal from four judgments returned at the Atlantic County Circuit of the Supreme Court in favor of the plaintiffs and against the defendant on the following facts:

Mendell Tischler, one of the plaintiffs, accompanied by his stepmother, Dora Tischler, was driving an automobile on July 29th, 1929, at five o'clock in the morning in an easterly direction on Baltic avenue in Atlantic City, where the same is intersected by Illinois avenue. The street first mentioned run east and west, the second, generally, north and south. Crossing this intersection at grade are several sets of railroad tracks. Illinois avenue is guarded by crossing gates operated from a tower in this area. Baltic avenue is not so guarded but the railroad company employs a crossing watchman at that point. At this crossing there is a northbound then a southbound track; a yard track, likely used for switching purposes; then a north and southbound track of the electric line which the map designates as the Newfield branch, and still another, apparently a siding, known as the Jersey track. The train which collided with the plaintiff's automobile apparently was engaged in a switching operation, because it had moved over this intersection in the opposite direction shortly prior to the happening. It had been running on what is known as the Jersey track and thence had been switched to the yard track. At the time of the accident the engine was at the rear of a line of cars, seven in number, and was thus moving the train. On the top of the front and last car a brakeman was stationed each with a lighted lantern.

On the previous movement of the switching operation and after the train had passed the point of Illinois avenue, the gates were raised and when the train started back again these gates were lowered and the testimony is that the crossing watchman stood in the middle of Baltic avenue swinging his lantern. There was testimony, too, that the brakeman stationed on top of the front car of the train was swinging his lantern and that the bell of the engine was ringing. At this juncture of affairs the plaintiff came along Baltic avenue

towards the tracks. The crossing man there stationed testified that he waved his lantern and shouted to Tischler to stop and that in order to avoid being struck he had to step out of the way of the automobile. The brakeman on top of the front car says that he blew his whistle, shouted at the automobile driver, and waved his lantern and at the same time gave a signal to the rear-end brakeman which signal the second brakeman relayed to the engineer, who, in a very short time, stopped the train. There was testimony that the train was traveling eight miles an hour; that at the moment the accident was imminent it was about ten or twelve feet away from the automobile and that after the collision it traveled only forty feet.

Plaintiff's car was struck at a point about the middle of Baltic avenue and was overturned, the driver hurt and the stepmother, Dora Tischler, so injured that as a result she died three weeks afterwards.

This evidence concerning the facts of the happening was denied by the plaintiffs' witnesses who said that no bell was rung; no crossing man was on Baltic avenue waving a lantern and no brakeman on the front part of the train, so that clear-cut issues of fact were presented for the determination of the jury.

The jury found in favor of the several plaintiffs and against the defendant in amounts totaling $18,000 which the trial court, on rule to show cause, reduced to $16,000.

Some twenty grounds are assigned for reversal, several of which have been abandoned. All of the remaining grounds for reversal have to do with the refusal of the trial court to charge certain requests submitted by the defendant and an affirmative attack upon the trial court's charge as given to the jury.

The first point made by appellant is that section 36b of the Railroad act (*Comp. Stat.* 1910, *p.* 4238) does not relieve a traveler at a railroad crossing from looking and listening. Section 36b is as follows:

"Wherever any railroad whose right of way crosses any public street or highway, has or shall install any safety gates,

bell or other device designed to protect the traveling public at any crossing or has placed at such crossing a flagman, any person or persons approaching any such crossing so protected as aforesaid, shall, during such hours as posted notice at such crossing shall specify, be entitled to assume that such safety gate or other warning appliances are in good and proper order, and will be duly and properly operated unless a written notice bearing the inscription "out of order" be posted in a conspicuous place at such crossing, or that the said flagman will guard said crossing with sufficient care whereby such traveler or travelers will be warned of any danger in passing over said crossing, and in any action, brought for injuries to person or property, or for death caused at any crossing protected as aforesaid, no plaintiff shall be barred of the action because of his failure of the person injured or killed to stop, look and listen before passing over said crossing." *Pamph. L.* 1909, *p.* 137.

Now the appellant contends that the failure of the trial court to honor its requests to charge Nos. 1, 9, 10, 11 and 12 constitutes reversible error. These requests possess the same general trend and that is to read into the section of the Railroad act, above quoted, a meaning that is not in the language of the statute and that a careful analysis of it will not support. They are to the effect that under these circumstances there was a duty upon the traveler, approaching a guarded crossing, to look and listen for approaching trains. This contention has been disposed of and adversely to the appellant, in the case of *Fernetti* v. *West Jersey and Seashore Railroad Co.*, 87 *N. J. L.* 269, and *Snuffin* v. *McAdoo, Director-General*, 93 *Id.* 231. Under these cases the rule is clear that under such circumstances, as are here disclosed, the plaintiff and the plaintiff's intestate were absolved from stopping, looking and listening before passing over such railroad crossing. *Brown* v. *Erie Railroad*, 91 *Atl. Rep.* 1023.

These several requests to charge, therefore, were properly refused.

In the appellant's second point, it is urged as ground for reversal, that the plaintiff's intestate and Mendell Tischler,

being engaged in a joint enterprise, the contributory negligence of Mendell is imputable to the intestate and she was charged with the same duty of caution as he was. This point embraces the fifth, sixth and seventh requests to charge offered by the defendant below which the court refused to charge. Now if, under the section of the statute quoted above, the operator of the car was not guilty of contributory negligence as a matter of law, and the jury found him free from negligence as a matter of fact, it is only simple logic to see that his passenger could not be guilty of negligence and these requests to charge were likewise properly refused. It might be observed that there was no evidence in the case to justify the control over the car which the appellant strove to impress upon the trial court in these requests and it should be further observed that the appellant's argument on this point begs the question entirely.

The next point made by appellant is that the court erred in modifying the appellant's third request to charge. The third request had to do with what would be contributory negligence on the part of Mendell Tischler, if the jury found the facts to be as stated in this request and the fourth had to do with what would be an assumption of risk in driving his car across the tracks under the circumstances if the jury found the facts to be as testified to by defendant's witnesses. The court charged the third and fourth request in the exact language as submitted, adding the words, "in accordance with the statute." The statute referred to was section 36b of the Railroad act (quoted above) which had been read to the jury. On this point, it will suffice to say that there is no merit in this ground for reversal and that the court's charge was proper. Since the case under consideration was one that clearly called for the court's interpretation of section 36b of the Railroad act, it is difficult to understand how the allusion to that very section could be considered erroneous and it was not.

The appellant now proceeds to argue for reversal on the ground of errors in the court's charge as given the jury and exception is taken to the following language concerning the expectancy of life of the deceased: "It has been testified in

this case, I believe, that Mrs. Tischler was a lady forty-four years of age, and that she had an expectancy of future life cannot be disputed, as I take it. Just what that expectancy of future life was, there was no testimony offered in proof, and I know of no testimony in the case on which you can figure any future expectancy of life, other than that furnished by the Bible, which states that under certain circumstances, 'three score years and ten,' " &c.

A reading of the entire charge convinces us that it would be preposterous to conclude that the court was charging the jury that the decedent's expectancy of life was the difference between forty-four and seventy years. It is clear from a reading of what preceded and what came after this language complained of that the court correctly instructed the jury on this question. The court told the jury that the decedent might have died the following week from disease or from any contingency that might arise to end her life. The Biblical allusion is merely graphic language. The court expressly said that the jury was not to take the difference between her present age and three score and ten and to subtract one from the other and say that that was her expectancy. The court instructed the jury to take into consideration the evidence in the case, the decedent's age, her health, and the business in which she was engaged, as well as the possibilities and uncertainties of the future continuance of her life and gave a clear exposition as to how to arrive at the pecuniary value which the plaintiffs claimed had been taken away from her by her death, which they might have enjoyed through her expectancy. The court further went into detail concerning the fact that some of the next of kin might have died or might have left the decedent or might have reached their majority when they wouldn't have needed her support, comprehensively going into all the facts and circumstances concerning the decedent's expectancy of life, and we find the charge without legal fault.

The final point presented by the appellant is that the court erred in its charge to the jury in outlining the distinction between the claims of the respective parties plaintiff, *i. e.,* the claim of Mendell Tischler, the driver, as contrasted with the claim of Dora Tischler, the passenger, by using the words

"concurring negligence." The court said in substance that if the defendant was guilty of negligence even though there was concurring negligence on the part of the driver of the automobile and where the fact of common enterprise between the passenger and the driver of the car does not in fact exist and it appears that the passenger did not exercise control over the driver, nevertheless there could be recovery on behalf of the passenger. The appellant attempts to spell out of this language reversible error, relying on the case of *Killeen* v. *Public Service Co-ordinated Transport,* 10 *N. J. Mis. R.* 366. A reading of that case dissipates the appellant's contention. It is patent that the court charged that the negligence of Mendell Tischler, the driver, if it existed, might not, under certain circumstances, be attributable to his passenger. The objection to the court's charge is fanciful rather than real and between this situation and the one outlined in the Killeen case there is a wide difference. We find no error in the charge.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.